# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCOTTY A. COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-18-77-RAW-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Scotty A. Cooper requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-five years old at the time of the most recent administrative hearing (Tr. 147, 724). He completed tenth grade and has no past relevant work (Tr. 175, 715). The claimant alleges inability to work since his protected filing date of May 21, 2013, due to anxiety, depression, mental breakdown, back problems, hip problems, problems with his right arm, and hepatitis C (Tr. 174, 698).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on May 21, 2013. His application was denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 30, 2014 (Tr. 10-22). The Appeals Council denied review, but this Court reversed in Case No. CIV-15-61-RAW-SPS and remanded with instructions to properly consider the evidence in the record related to the claimant's mental limitations (Tr. 796-807). On remand, ALJ James Stewart held a second administrative hearing and again determined that the claimant was not disabled in a written decision dated January 3, 2018 (Tr. 696-717). The Appeals Council again denied review, so ALJ Stewart's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(a), with the additional limitations of: frequently handling, fingering, and feeling, as well as overhead reaching; only occasionally stooping, crouching, crawling, kneeling, balancing, and climbing ramps/stairs; and no climbing ladders/ropes/scaffolds. Stooping should also be limited to picking up or otherwise manipulating objects that are at knee level or above. Additionally, he found that the claimant should have no exposure to concentrated levels of fumes, dusts, gases, odors, poor ventilation, or other respiratory irritants. As to his mental impairments, the ALJ found that the claimant could perform unskilled work consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember, and carry out simple instructions. He found the claimant could maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks, over a 40-hour workweek, that the claimant could relate to supervisors and co-workers on a superficial work basis, and that he could adapt to a work situation. Further, he found that the claimant should work at his own workstation independently performing his own tasks, without having to directly interact with co-workers to perform those tasks; should have no contact with the general public as part of his work duties such that any contact would be incidental and superficial; should not work at jobs where changes in work routine occur on a regular basis or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust. Finally, he found that due to mental health symptoms

the claimant would have to leave work early or miss work entirely two to three times per year (Tr. 702). The ALJ then concluded that although he had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *i. e.*, document preparer, sorter, or table worker (Tr. 715-716).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly account for his subjective complaints and pain, (ii) in failing to properly account for his global assessment of functioning ("GAF") scores in the record, (iii) by failing to properly account for the opinion of his treating physician, and (iv) in failing to account for his severe impairments of obesity and migraine headaches. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

ALJ Stewart found the claimant had the severe impairments of residual effects of a right wrist fracture and non-union after a motor vehicle accident in 2003, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, morbid obesity, asthma (COPD), osteoarthritis, migraine headaches, opiate abuse, alcohol abuse, polysubstance abuse by history, major depressive disorder with and without psychotic symptoms, anxiety disorder not otherwise specified, and personality disorder (Tr. 698). The relevant medical evidence reveals that Dr. Nelson Onaro regularly treated the claimant for back pain and anxiety between May 2015 and July 2016 (Tr. 350-366, 422-456, 466-494, 527-529). The claimant had previously been found disabled due to physical impairments and was awarded benefits in 2006, but they were discontinued in 2012 upon a finding of medical improvement.

The relevant mental health medical records reflect that the claimant was admitted to Red Rock Behavioral Services on March 25, 2013 for complaints of being depressed and thoughts of harming himself, as well as relationship problems and financial stressors (Tr. 382). He was discharged on March 29, 2013 (Tr. 398). While there, he was stabilized in a secure environment and started on medications to reduce symptoms and stabilize his mood and was referred to CREOKS for follow up treatment at discharge (Tr. 399). He was assessed with depressive disorder and personality disorders and assigned a global assessment of functioning (GAF) score of 55 upon discharge (Tr. 394).

On July 31, 2013, Kenny A. Paris, Ph.D., conducted a mental status/diagnostic examination of the claimant (Tr. 403). Dr. Paris observed that the claimant's affect was consistent with his report of depression, that the claimant was tearful throughout the interview and exam, and that his IQ was estimated at 85-90 (Tr. 406-407). He assessed the claimant with major depressive disorder, recurrent, moderate to severe (without psychotic features) and anxiety disorder NOS, along with a GAF of 40 (Tr. 407). Dr. Paris's assessment indicated that the claimant's memory skills appeared to be impaired, but there were no significant problems with persistence and pace, and that his impairments were based on both mental and physical problems because the combination of mental and physical symptoms leads to greater impairment and makes him less likely to be successful in a job setting, although the physical impairments were beyond the scope of the evaluation (Tr. 407). Additionally, Dr. Paris stated that, from a psychological standpoint, the claimant's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was estimated to be below average

-6-

(Tr. 407). Dr. Paris stated that the claimant was not likely to improve in the next twelve months, but that the claimant's judgment was estimated to be adequate (Tr. 407).

In August 2013, the claimant presented to Redbird Smith Health Center noting that his anxiety and depression had increased and he had been out of his medications for several weeks (Tr. 540). He was accepted for therapy and assessed with depressive disorder NOS, along with a GAF of 50 (Tr. 452, 540).

On August 12, 2014, the claimant presented to Brookhaven Hospital in Tulsa, Oklahoma, and he was assessed on Axis I with opiate dependence; major depression, recurrent, severe without psychotic features; generalized anxiety disorder; panic disorder with agoraphobia; and insomnia. He had a GAF of 19 upon admission and a GAF of 40 upon discharge August 17, 2014 (Tr. 646, 665). Upon discharge, it was noted the claimant showed considerable improvement of depression, anxiety, and insomnia with medicine adjustment, and that he successfully detoxified from opiate dependence (Tr. 647). It was noted the claimant knew he had a problem with opiate dependence and with recurrent depressive episodes, and that he would need ongoing treatment (Tr. 648). Anticipated problems upon discharge included relapse and/or mood decompensation (Tr. 648).

On August 21, 2014, the claimant went to Redbird Smith Health Center for complaints of back pain, noting his recent hospitalization and detoxification at Brookhaven (Tr. 926). In looking at his medications and past opioid dependence, the treatment notes indicate that the claimant was "not happy with not receiving narcotics" at this appointment (Tr. 929).

On August 22, 2014, Dr. Heather O'Neal completed a Medical Source Statement (MSS) as to the claimant's physical capabilities, indicating that he could sit thirty minutes at a time and up to one hour in an eight-hour workday, that he could stand thirty minutes at a time and up to two hours, walk two hours at a time and up to three hours total, and that his combined walking/standing limit for the day was five hours (Tr. 558).  She found he could lift/carry up to ten pounds continuously and up to twenty pounds frequently, that he could use his left hand but not his right hand for repetitive actions, and that he could not use his feet for operating foot controls (Tr. 559).  Additionally, she found he could only occasionally bend, squat, crawl, climb, and kneel, and that he could never reach above the head, stoop, or crouch, and that he could not tolerate exposure to hazards (Tr. 559).  She indicated that his pain was severe, that he would need to take unscheduled breaks during a workday, and that he would be absent more than four days per month (Tr. 560).

On October 22, 2016, the claimant presented to Hastings Hospital with an infection in his left ring finger and was assessed with cellulitis (Tr. 934-935).  He was later scheduled for surgery of that finger on June 1, 2017 after he went hand fishing for catfish (commonly referred to as "noodling") and a fish flipped his ring finger over and broke it in three places (Tr. 1012, 1016).  He subsequently developed an infection in the finger and was prescribed an antibiotic which apparently resolved the infection (Tr. 1069).

Crisis treatment notes from CREOKS on April 21, 2017 indicate that the claimant reported suicidal thoughts after being off his medications for a few months and helping his son facing legal problems which caused a financial strain (Tr. 1037).

State agency physicians determined that the claimant could perform light work (Tr. 69-70, 84-85). On reconsideration, Dr. David McCarty found that the claimant had the additional postural limitations of only occasionally climbing ramps/stairs and stooping, and only frequently kneeling and crouching, with limited overhead reaching bilaterally and limited handling on the right (Tr. 84-85). As to his mental impairments, state reviewing physicians found some moderate limitations and concluded that he had the ability to receive, understand, and carry out simple instructions as well as some more detailed instructions, but not complex instructions; that he had the ability to interact appropriately with co-workers, supervisors, and the general public on a superficial level; and that he had the ability to adapt to changes in the workplace (Tr. 71-72, 87-88).

At the most recent administrative hearing, the claimant testified that he had about a "dozen or so" migraines in two years, and that he had been to the hospital at least twice for treatment for them (Tr. 742-744), although there was some confusion about the number of hospital visits and the ALJ pointed out a complete gap in treatment records from September 15, 2014 to May 19, 2016, including a lack of hospital visits during that time (Tr. 742-743). The claimant testified that he was originally found disabled years ago after he was in a motorcycle accident and had been hit by a drunk driver, which injured his right arm and resulted in five surgeries (Tr. 746). Additionally, he noted left hand problems, back pain, trouble focusing, and anxiety, as well as difficulty remembering to take his medications (Tr. 746). He further testified that he became addicted to opiates and now only takes over-the-counter pain medications (Tr. 748). When asked about continued problems with his right arm and hand, he stated that it keeps getting worse, that he does

not have any grip strength, and he cannot move his wrist like he used to (Tr. 749-750). As to his left hand, he testified that one of his fingers was broken in three places, that he had surgery on it, and that it has arthritis in it now (Tr. 750). When asked about treatment following surgery, he indicated that there had not been any (Tr. 751-753). When asked about his mental impairments, he indicated that he went through a bad divorce, and that he had been through inpatient treatment three or four times (Tr. 755-756). He stated that usually when he in inpatient he has been off his medications and "things build up" so they treat him to get him stabilized (Tr. 757-758). He testified that he sees his pastor as a religious advisor for faith-based healing (Tr. 759). He also testified that about four days a week he will not leave the house (Tr. 762).

In his written opinion at step two, the ALJ noted the claimant's treatment for migraine headaches consisted of prescription medications, noting that it barely met the threshold for a severe impairment and that the sedentary RFC of limited exertion was sufficient to address his migraines (Tr. 699). At step four, the ALJ summarized the claimant's testimony from both administrative hearings, as well as the medical evidence in the record. He found the claimant's statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 704). Specifically, he noted that the claimant's right arm injury had largely resolved by 2011, when he had a 4/5 grip strength on the right and 5/5 grip strength on the left, and that he had 5/5 grip strength bilaterally upon consultative examination in 2013 (Tr. 704). Furthermore, he noted that the claimant went noodling and played the guitar during times when he complained of disability related to both of his hands (Tr. 713). The ALJ also noted the claimant's BMI of 42.59 in 2013,

but that upon examination the claimant moved all extremities well and had a normal gait (Tr. 705). The ALJ noted the claimant asserted abstinence from substances but that the record appeared to indicate that he would drink when off his mental health medications and that he sometimes tested positive for the use of marijuana (Tr. 710). Furthermore, the ALJ found that the claimant's earnings were not consistent with his work history (Tr. 710-711). As to the opinion evidence, the ALJ found that Dr. O'Neal's opinion seemed largely based on the claimant's presentation at an appointment with a cane and his own reports, and made prior to seeing x-ray results that showed only mild degenerative changes in the lumbar spine and no acute findings in the right arm, and therefore assigned her opinion little weight (Tr. 711). He noted that GAF scores were unreliable indicators of disability and given little weight, but that he had carefully reviewed the GAF scores in this record, most of which were assigned during or immediately after an inpatient setting (Tr. 712). He further noted Dr. Parris's assigned GAF, but found it was undercut by the claimant's professed symptoms that Dr. Parris ultimately did not adopt (Tr. 712). The ALJ noted that Dr. Parris *questioned* the claimant's ability to perform in a work setting but concluded that the record did not *preclude* the claimant's performance of simple work, that even Dr. Parris found the claimant capable of persistence and pace, and that the claimant's "below average" abilities did not indicate a complete mental disability (Tr. 712-713).

  The claimant first contends that the ALJ erred in analyzing his subjective statements because he improperly relied on his continued smoking and minimal daily activities to discount such statements. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole.  *See Casias,* 933 F.2d at 801.  An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].  The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient.  *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 704).  In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements of pain and the evidence of record, including:  (i) the claimant's activities including noodling and playing guitar, (ii) the gap in treatment records for over a year despite the availability of medical care, and (iii) objective testing that did not support the claimant's complaints.  Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

Second, the claimant contends that the ALJ erred in his analysis of the various GAF scores contained in the record.  "Although the GAF rating may indicate problems that do

not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947.  Accordingly, a GAF score standing alone, without any further narrative explanation, does not necessarily evidence an impairment that severely interferes with an ability to perform basic work activities.  *See Zachary v. Barnhart,* 94 Fed. Appx. 817, 819 (10th Cir. 2004) (unpublished).  The ALJ's analysis of the claimant's GAF scores, set forth above, reflects he thoroughly considered each of the claimant's GAF scores.  *Frantz v. Astrue,* 509 F.3d 1299, 1301 (10th Cir. 2007).  Here, not only did the ALJ mention the negative GAF scores in the record, he also discussed reasons why they should be discredited; thus, there is no error.

This is not a case where the ALJ ignored GAF scores or medical opinions; rather, he considered this evidence in light of all of the other evidence before him.  *See Petree v. Astrue,* 260 Fed. Appx. 33, 42 (10th Cir. 2007) ("[A] low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record.")  Furthermore, the claimant does not point to any limitations in the treatment notes that the ALJ failed to consider and account for in the RFC assessment.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004).

Next, the claimant contends that the ALJ failed to properly analyze Dr. O'Neal's opinion as a treating physician. The Court finds that the ALJ did not, however, commit any error in his analysis. As a treating physician, the ALJ was required to give Dr. O'Neal's medical opinion controlling weight if her opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that Dr. O'Neal's opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject Dr. O'Neal's opinion entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of Dr. O'Neal's opinion is set forth above. The Court finds that the ALJ considered her opinion in accordance with the appropriate standards and properly concluded it was not entitled to controlling weight. In fact, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including Dr. O'Neal, whose opinion was not supported by later objective testing, as discussed by the ALJ. The ALJ thus did not commit error in failing to include any additional limitations imposed by Dr. O'Neal in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight assigned these opinions, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

Finally, the claimant asserts that the ALJ failed to properly account for his obesity and migraines in the record. The ALJ's handling of the claimant's migraines is set forth above. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately"; therefore, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an

individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*, 2002 WL 34686281, at *6. Here, the record reflects that the claimant's weight placed him in the category of morbidly obese. However, the ALJ thoroughly discussed the claimant's physical and mental impairments and the reasons for his RFC determination, the claimant pointed to no additional evidence or opinion in the case record as to his obesity, and the ALJ was not required to speculate about whether the claimant's obesity exacerbated his other impairments. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. This was "well within the province of the ALJ." *Corber v.*

*Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**